IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ERIC E. SPENCE                    *

    Plaintiff,                  *

v.                                *       Civil Action No. BPG-08-0851

MICHAEL J. ASTRUE,                *
Commissioner of
Social Security,                  *

    Defendant.                  *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM**

Plaintiff, Eric E. Spence, brought this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying him disability insurance benefits ("DIB") under Title II of Social Security Act, 42 U.S.C. § 401, et seq. Currently pending are plaintiff's Motion for Summary Judgment and defendant's Motion for Summary Judgment. (Paper Nos. 22 27.) These motions have been referred to the undersigned with the parties' consent pursuant to 28 U.S.C. § 636 and Local Rule 301. No hearing is deemed necessary. Local Rule 105.6. For the reasons discussed below, the court grants plaintiff's Motion for Summary Judgment, denies defendant's Motion for Summary Judgment, and remands this case to the Commissioner for further proceedings consistent with this opinion.

**I.     Background**

Plaintiff filed for DIB on July 28, 2005, alleging disability beginning on October 2, 2004 due to arthritic pain in his neck, knee, and hip.  (R. at 11, 36.)  His application was denied initially and on reconsideration.  (R. at 23-24, 36-39.)

On October 19, 2007, plaintiff, represented by an attorney, testified at a hearing before Administrative Law Judge ("ALJ") Judith A. Showalter.  (R. at 206-47.)  Also testifying was a qualified vocational expert ("VE").  (Id.)  In a decision dated November 26, 2007, the ALJ denied benefits.  (R. at 10-22.)  Although the ALJ found that plaintiff suffers from severe arthritis in the knees, hips, and cervical spine, and is obese, she concluded that these impairments do not individually or collectively rise to the level of any of the impairments in the Listings of Impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings").  (R. at 13-14.)  In addition, the ALJ found that plaintiff is capable of performing work that is available in the national economy based on his residual functional capacity ("RFC"), age, education, and past work experience.  (R at 14-21.)  Accordingly, the ALJ concluded that plaintiff is not disabled for the purposes of awarding benefits. (R. at 21-22.)

On February 28, 2008, the Appeals Council held that there was no basis for granting review of the ALJ decision.  (R. at 3-

5.)  Plaintiff timely sought judicial review and now petitions this court for summary judgment reversing the ALJ's decision and awarding plaintiff the benefits he has requested.  (Paper Nos. 1, 22.)  In the alternative, plaintiff asks this court to remand the matter for further proceedings.  (Id.)

## II.  Standard of Review

The role of this court on review is to determine whether the ALJ applied correct legal standards and whether substantial evidence supports the ALJ's decision.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is that which "a reasoning mind would accept as sufficient to support a particular conclusion."  Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966); accord Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).  It is more than a scintilla but less than a preponderance of the evidence.  Id.  It is evidence sufficient to justify a refusal to direct a verdict if the case were before a jury.  Hays, 907 F.2d at 1456.  In reviewing for substantial evidence, the court does not weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ.  Id.

In determining whether a claimant is disabled, the Commissioner has promulgated regulations that set forth the following five-step analysis.

    (1)    The ALJ determines whether the claimant is engaged in substantial gainful activity as defined in 20 C.F.R. § 404.1571 and § 416.971 et seq.  If so, the claimant is not disabled.

    (2)    If not, the ALJ examines the physical and/or mental impairments alleged by the claimant and determines whether these impairments meet the durational and severity requirements set forth in 20 C.F.R. § 404.1520 and § 416.920.  If not, the claimant is not disabled.

    (3)    If so, the ALJ considers whether the impairment or impairments, either severally or in combination, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, known as the Listing of Impairments.  If so, the claimant is disabled.

    (4)    If not, the ALJ considers whether the claimant retains the residual functional capacity ("RFC") to do past relevant work ("PRW").  If so, the claimant is not disabled.

    (5)    If not, the ALJ determines whether the claimant is capable of some other work based on the claimant's RFC, age, education, and past work experience.  The Commissioner bears the burden of proof at step five. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).  If the claimant is not capable of other work, the claimant is disabled.

See 20 C.F.R. §§ 404.1520, 416.920 (2009); Bowen v. Yuckert, 482 U.S. 137 (1987).

**III. Discussion**

    Plaintiff challenges the ALJ's findings on three grounds.  First, plaintiff argues that the ALJ failed to consider one of his impairments, ankylosing spondylitis, at any step of her decision.  (Paper No. 22 at 5-7.)  Second, plaintiff argues that the ALJ failed to properly evaluate his pain and other

4

subjective complaints. (Id. at 7.) Third, plaintiff argues that the ALJ erred by giving little weight to the opinions of his treating physicians. (Id. at 7-8.)

### a. The ALJ's Consideration of Plaintiff's Ankylosing Spondylitis

Plaintiff submitted medical evidence that he suffers from at least two distinct forms of arthritis: osteoarthritis of the knees and hips and ankylosing spondylitis. (R. at 127, 132, 136, 167, 172-74, 176-78.) Osteoarthritis is a "noninflammatory degenerative joint disease seen mainly in older persons," which is "characterized by degeneration of the articular cartilage, hypertrophy of bone at the margins, and changes in the synovial membrane." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1365 (31st ed. 2007). Ankylosing spondylitis is "a form of degenerative joint disease that affects the spine." Id. at 1779. It produces "pain and stiffness as a result of inflammation of the sacroiliac, intervertebral, and costovertebral joints; paraspinal calcification, with ossification and ankylosis of the spinal joints" and "may cause complete rigidity of the spine and thorax." Id. Plaintiff argues that the ALJ erred by not considering his ankylosing spondylitis at any step of her analysis. (Paper No. 22 at 5-7).

Defendant maintains that the ALJ, in fact, considered plaintiff's ankylosing spondylitis at all relevant steps of her

5

analysis.  (Paper No. 27 at 10-13.)  First, defendant asserts that the ALJ specifically referenced plaintiff's ankylosing spondylitis several times in her decision.  (Id. at 10-12.)  Second, defendant notes that the ALJ's step three analysis included a discussion of whether plaintiff's impairments rose to the level of Listing 14.09 (Inflammatory Arthritis).  (Id. at 12-13.)  Since ankylosing spondylitis is covered under Listing 14.09, defendant argues that the ALJ considered plaintiff's ankylosing spondylitis at step three even though she did not specifically reference this impairment at this part of her analysis.  (Id.)

All of the ALJ's findings must be supported by substantial evidence.  Hays, 907 F.2d at 1456.  Additionally, the ALJ has a duty to explain her findings by making specific references to evidence supporting her conclusions, including the reasons for rejecting evidence which contradicts the ALJ's findings.  Smith v. Heckler, 782 F.2d 1176, 1181 (4th Cir. 1986).  Here, the ALJ did not satisfy her duty to explain how she considered evidence of plaintiff's ankylosing spondylitis.

The only specific references to plaintiff's ankylosing spondylitis in the ALJ's decision were made in the context of noting that plaintiff's treating physicians' diagnosed plaintiff with this impairment.  Specifically, the ALJ noted that Dr. Douglas Holman, one of plaintiff's treating physicians,

6

diagnosed plaintiff with ankylosing spondylitis.  (R. at 16, 18.)  In addition, the ALJ noted that Dr. Mary Burgoyne, plaintiff's orthopedist, recommended various medications for plaintiff's "disease," which defendant asserts was a reference to plaintiff's ankylosing spondylitis.  (R. at 18).[1]  Other than these passing references, the ALJ did not provide any analysis regarding plaintiff's ankylosing spondylitis.  (R. at 10-22.)

Likewise, contrary to defendant's assertion, the fact that the ALJ examined whether the plaintiff's impairments rose to the level of Listing 14.09 does not mean the ALJ specifically considered ankylosing spondylitis in that context.  Under Listing 14.09, a claimant will be considered disabled if the claimant meets the criteria of one of the Listing's five paragraphs.  20 C.F.R. Part 404, Subpt. P, App. 1 §14.09.  Ankylosing spondylitis is covered in paragraph B of Listing 14.09.  Id.  Specifically, a claimant will be found disabled under Listing 14.09B if the ALJ concludes that the claimant has documented "[a]nkylosing spondylitis or other spondyloarthropathy, with diagnosis established by findings of unilateral or bilateral sacroliitis (e.g., erosions or fusions), shown by appropriate medically acceptable imaging."  Id.  The

---

[1] The ALJ, however, discounted Dr. Holman's report without adequate explanation, as discussed below.  (R. at 18.)  Similarly, the ALJ did not explain what weight, if any, she accorded Dr. Burgoyne's report.  (Id.)

7

claimant must also submit documentation of: "(1) [h]istory of back pain, tenderness, and stiffness, and (2) [f]indings on physical examination of ankylosis (fixation) of the dorsolumbar or cervical spine at 45° or more of flexion measured from the vertical position (zero degrees)." Id.

The ALJ's analysis of Listing 14.09 is as follows:

> The claimant's medical records related to his arthritis was (sic) examined and compared with the criteria of listings 1.00 (Musculoskeletal)and 14.09 (Inflammatory Arthritis) of the Medical Listings. Although there is a history of joint pain, there is little or no swelling. The claimant has a good range of motion in the affected joints. The claimant is able to ambulate effectively. In addition, there is no medical documentation indicating deformity in two or more major joints.

(R. at 13.)

This analysis did not specifically reference ankylosing spondylitis or paragraph B of Listing 14.09. Further, three of the ALJ's four statements explaining her conclusion refer to plaintiff's joints, which indicates that the ALJ was instead discussing whether plaintiff suffered from inflammatory arthritis of the joints under paragraph A of Listing 14.09.[2] 20 C.F.R. Part 404, Subpt. P, App. 1 §14.09A. Based upon the

---

[2] A claimant will be considered impaired under Listing 14.09A if the claimant has a "[h]istory of joint pain, swelling, and tenderness, and signs on current physical examination of joint inflammation or deformity in two or more major joints resulting in inability to ambulate effectively or inability to perform fine and gross movements effectively . . . ." 20 C.F.R. Part 404, Subpt. P, App. 1 §14.09A.

8

current record, however, it does not appear that the ALJ considered plaintiff's ankylosing spondylitis in the context of Listing 14.09B.  A remand, therefore, is necessary so that the ALJ can detail her consideration of plaintiff's ankylosing spondylitis.

     **b.**    **The ALJ's Credibility Analysis as to Plaintiff's Pain at Step Four**

At step four, the ALJ concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible."  (R. at 17.)  Specifically, the ALJ discounted plaintiff's statement that, due to severe pain, he can only stand, walk, or sit in the same position for about thirty minutes.  (Id.)  Plaintiff argues that the ALJ based this credibility finding solely on plaintiff's demeanor at the hearing, which would constitute an impermissible "sit and squirm" test.  (Paper No. 22 at 7 (citing Wander v. Schweiker, 523 F. Supp. 1086, 1094 (D. Md. 1981) ("[I]t is inappropriate for the ALJ to judge a claimant by reference to some 'Sit and Squirm' index.")).)

Defendant contends that the ALJ did not conduct a "sit and squirm" test.  (Paper No. 27 at 13-15.)  Instead, defendant asserts that the ALJ relied on the record as a whole, including clinical evidence of plaintiff's impairments, plaintiff's

9

medication usage, and plaintiff's daily activities.  (Paper No. 27 at 14 (citing R. at 12-20).)

The ALJ's credibility determinations are generally entitled to great weight and may properly include observation of the claimant.  Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).  The ALJ, however, may not base the credibility determination solely on the demeanor of the claimant.  See Jenkins v. Sullivan, 906 F.2d 107, 108 (4th Cir. 1990).

In her step four analysis, the ALJ provided the following description of plaintiff's demeanor:

> The claimant was observed entering and leaving the room.  He walked with what appeared to be a normal gait into the room and out of the room.  He sat down normally and did not appear to be in any great discomfort throughout the length of the hearing.  It is noted that he did stand in a somewhat stiff manner, but it might also be noted that the claimant is obese, and that physical characteristic may have accounted for his appearance of stiffness when he stood at the termination of the hearing.[3]

(R. at 17.)

The ALJ also noted other evidence relating to plaintiff's activities as part of her analysis.  For instance, the ALJ stated that claimant "uses stairs in his home."[4]  (R. at 16.)  He

---

[3] There is evidence in the record that plaintiff experienced discomfort during the hearing. At plaintiff's counsel's request, the ALJ allowed plaintiff to take a break during the hearing. (R. at 234.)  When plaintiff returned, the ALJ asked plaintiff if he felt better.  (Id.)

10

also "performs his own personal hygiene without difficulty, except, he cannot . . . reach his back to wash it,"[5] and "dresses himself without assistance," but cannot wear socks "because he cannot bend over to put his socks on without help."[6]  (R. at 16-17.)  Further, the ALJ noted that plaintiff "mows the lawn using a riding mower"[7] and "is capable of lifting and carrying a one-gallon container of milk, but . . . noted difficulty bending over to replace the container into the refrigerator."  (R. at 17.)  With respect to plaintiff's medications, the ALJ stated that plaintiff is prescribed Percoset and Lortab for his pain.  (R. at 16.)

The ALJ, however, did not articulate how this evidence, or any other evidence in the record, contradicts plaintiff's claim that he can only sit, stand, or walk for about thirty minutes without experiencing severe pain.  (R. at 10-22.)  Given this lack of discussion in the ALJ's opinion, the court cannot determine whether the ALJ's credibility determination was based

---

[4] Plaintiff also testified that he must use a hand rail to help pull himself up stairs.  (R. at 229.)

[5] Plaintiff also testified that it is "[g]etting hard to even reach around to wipe [him]self sometimes."  (R. at 239.)

[6] Plaintiff also testified that he must put his belt in his pants before he puts his pants on because he cannot reach around to his belt.  (Id.)

[7] Plaintiff also testified that he is confined to his recliner for an entire day after mowing the lawn.  (R. at 240.)

solely on plaintiff's demeanor.  Accordingly, a remand on this issue is warranted so that the ALJ can specifically explain how the evidence in the record, including plaintiff's demeanor at the hearing, supports her conclusion that plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible."  (R. at 17.)

### c. The ALJ's Treatment of Medical Opinion Evidence

Plaintiff next asserts that the ALJ improperly assessed the medical opinion evidence in the record.  (Paper No. 22 at 7-8.)  Specifically, plaintiff argues that the ALJ erred by relying exclusively on the findings of one non-examining physician, Dr. William Hakkarinen, to support her conclusion that plaintiff is not disabled, rather than the findings of plaintiff's treating physicians.  (Id.)  Defendant maintains that the ALJ properly accorded the plaintiff's treating physicians less weight because their opinions were inconsistent with other substantial evidence in the record.  (Paper No. 27 at 15-18.)

The treating physician's medical opinion as to the "nature and severity" of a claimant's impairment will be given controlling weight if it is supported by clinical and laboratory evidence and is not inconsistent with the other substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2); Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).  On the other hand, a

12

treating physician's opinion should be given significantly less weight if it is inconsistent with substantial evidence.  Craig, 76 F.3d at 590.

In this case, plaintiff submitted medical evidence from treating physicians Douglas Holman, M.D. and John Durocher, M.D. (R. at 18-19, 144-66, 169-78, 171-74, 179-205.)  Dr. Durocher treated plaintiff from March 15, 2005 through June 6, 2006 and Dr. Holman treated plaintiff from June 27, 2006 through October 10, 2007.  (Id.)  Both physicians prepared medical assessments of plaintiff's ability to perform physical work-related activities.  (R. at 18, 146-50, 171-74.)  Dr. Holman concluded that "due to [plaintiff's] history of degenerative joint disease and ankylosing spondylitis he lacks the ability to lift and carry more than ten pounds on an occasional basis and more than five pounds on a frequent basis."  (R. at 18, 171-74.)  Dr. Holman further concluded that plaintiff "cannot stand/walk for more than a total of one hour in any eight-hour period and cannot stand or walk for more than thirty minutes before he must stop."  (Id.)  Dr. Durocher concluded that plaintiff is "capable of lifting and carrying thirty (30) pounds on an occasional basis," but incapable of "lift[ing] any amount of weight on a frequent basis."  (R. at 18, 146-50.)  In addition, according to Dr. Durocher's report, plaintiff "is only capable of standing/walking for a total of thirty (30) minutes."  (Id.)

13

The ALJ refused to accord either of these opinions substantial weight, noting that both doctors' conclusions were "inconsistent with the preponderance of medical evidence of record and not supported by [their] treatment notes." (R. at 18.) In addition, the ALJ noted that Dr. Durocher's conclusions were "inconsistent within the report itself" and not supported by any "subjective (sic) testing, such as MRIs, x-rays, etc."[8] (Id.) The ALJ, however, did not cite to any specific evidence in the record to support these conclusions. (Id.)

Instead, the ALJ relied heavily on the opinions of Dr. William Hakkarinen, a non-treating Department of Disability Services ("DDS") medical consultant, and Dr. Michael Peimer, a DDS physician who conducted a consultative medical examination of plaintiff on January 17, 2006. (R. at 19-20.) Dr. Hakkarinen concluded that plaintiff is capable of "standing/walking for at least two hours in any eight-hour period" and "sitting for prolonged periods of six hours or more in any eight-hour period." (Id.) The ALJ accorded this assessment "substantial weight" because it is "consistent with the preponderance of medical evidence of record and makes numerous specific references to medical reports in evidence." (Id.)

---

[8] The court assumes that the ALJ meant "objective testing."

14

Dr. Peimer did not provide any conclusions regarding plaintiff's physical work-related activities. (R. at 19.) He diagnosed plaintiff with "severe arthralgias[9] of the knees and hips," but noted that plaintiff has "excellent range of motion for someone so impaired." (Id.) Dr. Peimer also provided a range of motion chart, which the ALJ summarized in her decision. According to the chart, plaintiff's "elbows and wrists [are] normal," he has "good range of motion of the knee," and "forward flexion of the hip was 90 degree left and right with only mild pain." (Id.) The chart, however, noted that plaintiff has "some limitation in the range of motion of the cervical spine as demonstrated by the lateral flexion of 10 degrees on the right and on the left." (Id.) Further, plaintiff was "only able to rotate 40 degrees to the right and left with pain." (Id.) The ALJ accorded Dr. Peimer's assessment substantial weight because "it is consistent with the preponderance of medical evidence in the record."[10] (Id.) With respect to both Dr. Hakkarinen's and

---

[9] Arthralgia is "pain in a joint." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 152 (31st ed. 2007).

[10] The ALJ did not specifically explain how she interpreted Dr. Peimer's range of motion chart. (R. at 19.) The ALJ summarized the chart's data (e.g., "claimant's shoulder showed flexion of 140 degree on the right and 160 degrees on the left") and recited some of Dr. Peimer's conclusions based on this data (e.g., "good range of motion of the knee"). (Id.) The ALJ, however, did not expressly provide any overall conclusions about this chart. (Id.) Even if the court assumes that the ALJ implicitly concluded that Dr. Peimer's chart supports her

15

Dr. Peimer's opinions findings, however, the ALJ again did not cite to any specific medical evidence supporting the conclusion that those doctors' opinions should be accorded substantial weight.  (R. at 19-20.)

In sum, the ALJ did not adequately explain her reasons for according plaintiff's treating physicians' opinions less than controlling weight.  While the ALJ rejected those opinions noting "that they were inconsistent with the preponderance of medical evidence of record and not supported by [their] treatment notes," the ALJ did not cite any specific inconsistencies in the physicians' treatment notes.  (R. at 18-19.)  The court's review of those notes did not readily reveal any clear inconsistencies.  (See R. at 144-66, 169-78, 171-74, 179-205.)  Further, the ALJ did not cite any specific evidence in support of her conclusion that Drs. Holman and Durocher's reports are "inconsistent with the preponderance of medical evidence."  (R. at 18.)  Without any specific citations to inconsistencies in the physicians' notes or medical evidence, the court cannot conclude that the ALJ's decision to accord the

---

conclusion that plaintiff has a sufficient range of motion to perform sedentary work, the ALJ did not offer any explanation for that conclusion.

opinions of plaintiff's treating physicians less than controlling weight is supported by substantial evidence.[11]

### IV. Conclusion

For the foregoing reasons, the court grants plaintiff's Motion for Summary Judgment (Paper No. 22) and denies defendant's Motion for Summary Judgment (Paper No. 27). A separate order shall issue.

Date: 9-30-09                ____/s/_____
                             Beth P. Gesner
                             United States Magistrate Judge

---

[11] The court must note that it finds unconvincing plaintiff's arguments that the ALJ's opinion is flawed because: (1) DDS consultant Dr. Harriet Koppelman's opinion was apparently inadvertently left out of the record; and (2) the ALJ did not specifically note that medical records in the transcript refer to Dr. Hakkarinen with two different specialty codes (code #19 at R. at 24 and code #12 at R. at 141). (Paper No. 22 at 8.) First, there is no indication that the ALJ relied on Dr. Koppelman's opinion. Second, the ALJ did not rely on Dr. Hakkarinen's specialty codes to determine how much weight Dr. Hakkarinen's opinion should be accorded.

17